## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

### MOTION INFORMATION STATEMENT

Docket Number(s): **26-389** _____ Caption [use short title] _____

Motion for: **Emergency Stay of District Court Order and Judgment**

**Pending Appeal**

_____

**Kladny v. Deza**

Set forth below precise, complete statement of relief sought:

**Stay of District Court Order and Judgment granting**

**Appellee's Petition for the Return of the Child to**

**Argentina pursuant to the Hague Convention and**

**ICARA pending Appellant's appeal of the Order and**

**Judgment to this Court.**

_____

MOVING PARTY: **Alexandra Ruiz, Appellant**      OPPOSING PARTY: **Martin Kladny, Appellee**

- [ ] Plaintiff         - [ ] Defendant
- [x] Appellant/Petitioner    - [ ] Appellee/Respondent

MOVING ATTORNEY: **Michael Banuchis**      OPPOSING ATTORNEY: **Lucila I.M. Hemmingsen**

[name of attorney, with firm, address, phone number and e-mail]

Green Kaminer Min & Rockmore LLP           Sagiance LLP

420 Lexington Av. St. 2821, New York, NY 10170     125 Park Avenue, 25th Floor New York, NY 10017

(212) 257-1944; mbanuchis@gkmrlaw.com       212-520-6672; lhemmingsen@sagiancellp.com

Court- Judge/ Agency appealed from: **Eastern District - Judge Orelia E. Merchant**

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
- [x] Yes  - [ ] No (explain): _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  - [ ] Yes [x] No
Has this relief been previously sought in this court?  - [ ] Yes [x] No

Requested return date and explanation of emergency:
This is a case brought under the 1980 Hague Convention on the Civil Aspects

Opposing counsel's position on motion:
- [ ] Unopposed  - [ ] Opposed  - [x] Don't Know

Does opposing counsel intend to file a response:
- [ ] Yes  - [ ] No  - [x] Don't Know

of Child Abduction and the International Child Abduction Remedis Act, 22 U.S.C. 9001
et seq. and should be decided expeditiously. Appellant anticipates that the
district court will order the Child to Argentina imminently.

Is the oral argument on motion requested?  - [ ] Yes [x] No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  - [ ] Yes [x] No  If yes, enter date: _____

**Signature of Moving Attorney:**

_Michael Banuchis_ ___ Date: **February 23, 2026**   Service : [x] Electronic  - [ ] Other [Attach proof of service]

Form **T-1080** (rev. 10-23)

No. 26-389

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

MARTIN KLADNY,

     *Petitioner-Appellee*

v.

ALEXANDRA JAZMIN RUIZ DEZA

     *Respondent-Appellant.*

---

On Appeal from the United States District Court,
Eastern District of New York,
Case No. 2:25-cv-05754; Judge Orelia E. Merchant, Presiding

---

## RESPONDENT-APPELLANT'S EMERGENCY MOTION FOR STAY <u>PENDING APPEAL</u>

---

Michael Banuchis
Green Kaminer Min & Rockmore
LLP
420 Lexington Avenue, Suite 2821
New York, NY 10170
Tel: (212) 681-6400
Fax: (212) 681-6999
mbanuchis@gkmrlaw.com

*Attorneys for Respondent-Appellant*

1

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………………………………………….……6

STATEMENT OF FACTS…………………………………………………….………7

ARGUMENT……………………………………………….……….……....8

    A. Legal Standard…………………………………………………….......9

    B. A Stay Is Warranted Because Appellant Is Likely to Succeed on Appeal………..10

        i. Erroneous Rulings by District Court……………………………………12

            a. The Court Unreasonably Expedited Proceedings………………...12

            b. The Denial of an In Camera Interview or Appointment of Guardian ad Litem Further Undermined the Fact-Finding Process…………13

            c. The Court's Refusal to Compel Production of Dr. Cling's Reports Prejudiced Appellant's Ability to Corroborate Abuse Allegations………………………………………………..14

            d. The Court Improperly Excluded Appellant's Expert Testimony on Article 20…………………………………………………16

        ii. Article 13(b) Grave Risk of Harm Exception……………………………17

        iii. Article 13 Mature Age Exception……………………………….………21

        iv. Article 20 Human Rights Defense…………………………………...22

    C. Appellant and the Child Will Be Irreparably Harmed Absent a Stay…..............23

    D. The Balance of Hardships Tips Sharply in Appellant's Favor…………….........24

E.  Public Interest Weighs in Favor of a Stay…………………………………..24

CONCLUSION…………………………………………………………………26

<u>**TABLE OF AUTHORITIES**</u>

**Cases**                                                                  **Page (s)**

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ..............................................................10

*Blondin v. Dubois*, 238 F.3d 153 (2d Cir. 2001) ........................................ 12, 21

*Chafin v. Chafin,* 568 U.S. 165 (2013) ......................................... 8, 22, 24

*Colchester v. Lazaro*, 16 F.4th 712 (9th Cir. 2021)..................................13

*Custodio v. Samillan*, 842 F.3d 1084 (8th Cir. 2016)................................21

*da Silva v. de Aredes*, 953 F.3d 67 (1st Cir. 2020) ....................................9

*Didon v. Castillo*, 838 F.3d 313 (3d Cir. 2016)........................................22

*Diorinou v. Mezitis*, 237 F.3d 133 (2d Cir. 2001) ..................................9, 23

*Ermini v. Vittori*, 758 F.3d 153 (2d Cir. 2014) ........................................24

*Felberbaum v. Felberbaum*, No. 24-CV-02333 (PMH), 2025 WL 3442905

   (S.D.N.Y. Dec. 1, 2025)......................................................................12

*Jacquety v. Baptista* 538 F. Supp. 3d 325 (S.D.N.Y. 2021) ....................................12

*Karpenko v. Leendertz,* No. CIV.A. 09-03207, 2010 WL 996465 (E.D. Pa. Mar. 15,

   2010)....................................................................................................24

*Kijowska v. Haines*, 463 F.3d 583 (7th Cir. 2006) ....................................9

*Lops v. Lops*, 140 F.3d 927 (11th Cir. 1998) ............................................9

*Mathews v. Eldridge*, 424 U.S. 319 (1976)............................................10

*Neumann v. Neumann*, 684 F. App'x 471 (6th Cir. 2017) .............................. 8, 9, 24

*Saada v. Golan*, 712 F. Supp. 3d 361 (E.D.N.Y. 2024) ............................................12

*Souratgar v. Lee*, 720 F.3d 96 (2d Cir. 2013) ..........................................................9

*Van De Sande v. Van De Sande,* 431 F.3d 567 (7th Cir.2005) ................................24

*Souratgar v. Fair*, No. 12-5088 (2d Cir. Feb. 5, 2013)……………………………9

*West v. Dobrev*, 735 F.3d 921 (10th Cir. 2013)………………………………..…..10

**Other Authorities:**

51 Fed. Reg. 10503 at 22 (1986)...............................................................................22

Fed. R. App. P.

8(a)……………………………………………………………………………..8

Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25,

    1980, art. 13(b), T.I.A.S. No. 11670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg.

    10,494 (Mar. 26, 1986) ........................................................................................6

International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.*...................7

J. Garbolino, Fed. Jud. Ctr., *The 1980 Hague Convention on the Civil Aspects of*

    *International Child Abduction: A Guide for Judges* 212 (3d ed. 2023)................8

I.   **PRELIMINARY STATEMENT**

Respondent-Appellant Alexandra Jazmin Ruiz Deza ("Appellant") requests that this Court stay enforcement of the United States District Court for the Eastern District of New York (Merchant, Orelia E.) Memorandum and Order dated February 19, 2026 (the "Order") (ECF No. 60), granting Appellee's Petition for the Return of the Child to Argentina, and Judgment of that Order dated February 20, 2026 (the "Judgment") (ECF No. 62), pending Appellant's expedited appeal.

This emergency motion presents one urgent and irreducible question: whether a seven-year-old child who has disclosed sexual abuse perpetrated by her father will be forced onto an international flight and returned to the very environment she has described as unsafe before this Court has the opportunity to review the grave risk determination below. The district court has ordered her repatriation without protective safeguards and without meaningful appellate scrutiny of the unrebutted expert testimony that return at this time would be highly detrimental to her psychological well-being. If that order is executed and later found erroneous, the harm will be irreversible. A brief stay is the only mechanism capable of preserving her safety while this Court performs its essential review.

Pursuant to FRAP 8(2)(A)(i), seeking a stay from the district court is impracticable. The district court ordered the parties to submit a plan detailing the Child's return logistics by February 20, 2026, which they did, and a ruling is

6

expected imminently. Appellee has requested that the Child be returned to Argentina tomorrow, February 24, 2026 (ECF No. 64-1), while Appellant has respectfully requested a brief administrative stay in her proposed order (ECF No. 65). Under these circumstances, there is no realistic opportunity for the district court to consider and rule on a stay before the return is executed.

## II.   STATEMENT OF FACTS

This case involves a seven-year-old girl, M.K.R. (the "Child"), who has disclosed inappropriate touching from her father in Argentina. ECF No. 60 at 13. The parties' life in Argentina was colored by domestic violence perpetrated by Mr. Kladny. *Id.* at 22-4. M.K.R. was raised for the majority of her life in Peru by Appellant's parents. ECF No. 60 at 5. In May 2023, she returned to Argentina. *Id.* at 6. After the parties had entered a custody agreement in Argentina, the Child travelled to New York to visit Appellant in January 2025. *Id.* at 11. Appellant did not return the Child to Petitioner in Argentina on the agreed upon date due to the Child's disclosures of abuse perpetrated by Appellee. *Id.* at 11-13.

On October 14, 2025, Martin Kladny ("Appellee") filed a petition in the Eastern District of New York against Alexandra Jazmin Ruiz Deza ("Appellant"), pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, art. 13(b), T.I.A.S. No. 11670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10,494 (Mar. 26, 1986) ("Convention" or "Hague Convention"),

implemented in the United States through the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.* (formerly codified at 42 U.S.C. § 11601 *et seq.*) ("ICARA"), seeking return of their daughter, M.K.R., to Argentina (the "Petition"). ECF No. 1.

In her Verified Answer, Appellant asserted three affirmative defenses: (1) that returning M.K.R. to Argentina would expose her to physical or psychological harm under Article 13(b); (2) that M.K.R. objects to return and is sufficiently mature for her views to be considered; and (3) that return would violate fundamental American principles of human rights under Article 20. ECF No. 18.

Following a seven-day bench trial beginning January 12, 2026, the district court issued a Memorandum and Order on February 19, 2026, granting the petition and ordering the Child returned to Argentina. ECF No. 60. The Court directed the parties to submit a return plan, including travel details and passport release instructions, by February 20, 2026. *Id.* at 34. The next day, on February 20, 2026, Appellant filed a Notice of Appeal in the district court. ECF No. 63. That same day, the parties filed their respective proposed orders, in compliance with the district court's order (ECF No. 60). Appellant respectfully requested a brief administrative stay pending this Court's determination on the instant stay motion. In stark contrast, Appellee requested that the Child be returned to Argentina on a flight leaving New York on February 24, 2026. ECF No. 64-1.

8

### III. <u>ARGUMENT</u>

### A. <u>Legal Standard</u>

A party may move for a stay of a judgment or order issued in the district court. Fed. R. App. P. 8(a). " "Courts should apply the four traditional stay factors in considering whether to stay a return order: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Chafin v. Chafin,* 568 U.S. 165, 179 (2013). The factors "should be considered on a sliding scale so that a stronger showing on one factor may excuse a lesser showing on others." J. Garbolino, Fed. Jud. Ctr., *The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges* 212 (3d ed. 2023).

As the Supreme Court noted, "[i]n every case under the Hague Convention, the well-being of a child is at stake." *Chafin*, 133 S.Ct. at 1017. Thus, notwithstanding the need for expediency under the Hague Convention, a stay of an order directing return of a child to a foreign country is appropriate in order to safeguard children from potential disruption and harm where, as here, there is evidence of serious domestic violence. *See Neumann v. Neumann*, No. 16-1825 (6th Cir. July 22, 2016), ECF 21 (granting stay based on balance of harms in light of "the

9

circumstances that led to [respondent]'s departure with the children", which involved domestic violence*); see also Neumann v. Neumann*, 684 F. App'x 471, 472 (6th Cir. 2017); *Souratgar v. Fair*, No. 12-5088 (2d Cir. Feb. 5, 2013), ECF 114 (granting stay pending appeal in case involving substantiated allegations of domestic violence).

This Circuit has previously granted stays pending appeal in Hague Convention cases. *See Souratgar v. Lee*, 720 F.3d 96, 101 (2d Cir. 2013) (stayed enforcement of the repatriation order); *Diorinou v. Mezitis*, 237 F.3d 133, 138 (2d Cir. 2001) (Court "extended the stay until disposition of the appeal"). Other Circuits have as well. *See also Kijowska v. Haines*, 463 F.3d 583, 589–90 (7th Cir. 2006) ("it was best to continue the stay in force until the appeal was decided"); *Neumann v. Neumann*, 684 F. App'x 471, 472 (6th Cir. 2017) ("Because of a stay pending appeal entered by this court, however, the return has not been carried out"); *Lops v. Lops*, 140 F.3d 927, 935 (11th Cir. 1998) ("this court granted Respondents' "motion for emergency stay"); *da Silva v. de Aredes*, 953 F.3d 67, 72 (1st Cir. 2020) ("We issued a stay of the removal to give us time to consider the matter and expedited the appeal.").

**B. <u>A Stay Is Warranted Because Appellant Is Likely to Succeed on Appeal</u>**

**i. <u>*Erroneous Rulings by District Court*</u>**

a. <u>The Court Unreasonably Expedited Proceedings</u>

10

Although courts have significant discretion in the management of cases under the Hague Convention, litigants must always be afforded a meaningful opportunity to be heard. *See West v. Dobrev*, 735 F.3d 921, 932 (10th Cir. 2013) (due process in the context of the Hague Convention requires a meaningful opportunity to be heard), *see also Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976) (requiring evidentiary hearings to be held at a meaningful time, in a meaningful manner, before an impartial decision maker), *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("[a] fundamental requirement of due process is the opportunity to be heard").

Here, the district court required Appellant to file her Answer only eight (8) days after service. *See* D. Ct. Minute Entry dated December 12, 2025. The district court initially scheduled a merits hearing for December 19, 2025 despite being informed that Appellant intended to assert an Article 13(b) grave risk defense involving allegations of physical and sexual abuse. Only after objection was the hearing moved to January 5, 2026. *See* D. Ct. Minute Entry dated December 19, 2025. By consent it was later adjourned to January 12, 2026. *See* D. Ct. Minute Entry dated December 30, 2025. The district court refused any further extensions.

On January 1, 2026, Appellant moved for an adjournment on grounds of prejudice and inability to adequately prepare in light of the serious abuse allegations. ECF No. 42. That request was denied. *See* D. Ct. Dkt. Order dated January 2, 2026. On January 9, 2026, Appellant filed a motion to continue the trial for the same

11

reasons, in addition to unexpected discovery issues that arose. ECF No. 50. That motion was also denied. *See* D. Ct. Dkt. Order dated January 10, 2026.

The practical effect of these rulings was that Appellant was required to investigate and prepare a grave risk defense involving alleged sexual and physical abuse of a minor child in barely one month, over the winter holidays. That timeline was not just expedited — it was compressed to a degree that materially impaired Appellant's ability to gather records and develop corroborating evidence.

For example, the district court found that, "[Appellant had] failed to present any contemporaneous communications or medical records related to the alleged incidents…" pertaining to the violence committed towards her by Appellee. ECF No. 60 at 22. Appellant was unable to produce medical records from the domestic-violence incidents in Argentina because they occurred more than five years ago, and the hospitals in Argentina advised that it would take months to retrieve archived records. Appellant is now attempting to expedite the process, but even with those efforts, the documentation might not be obtained in time for this appeal or to file a motion for a new trial in the district court. With such a truncated timeframe for the evidentiary hearing, Appellant lost the meaningful opportunity to present this evidence, despite its great relevance to the grave-risk analysis.

Furthermore, the district court held that "Dr. Favaro did not diagnose the Child with post-traumatic stress disorder ("PTSD"), and he further testified that the Child's

12

American therapist had not diagnosed her with PTSD." ECF No. 60 at 29. However, the Child has received a preliminary diagnosis of PTSD by her current therapist in New York and is waiting to be seen by a psychiatrist to have the diagnosis confirmed. ECF No. 53 at ¶ 60. If Appellant had more time, the Child might have had her PTSD diagnosis confirmed by the time trial commenced, which may have impacted the district court's decision as PTSD-related harm caused by return constitutes grave risk under Article 13(b). *See, e.g., Blondin v. Dubois*, 238 F.3d 153, 158 (2d Cir. 2001) (affirming district court's grave risk determination based on a finding the children would suffer from a recurrence of PTSD); *Saada v. Golan*, 712 F. Supp. 3d 361, 378 (E.D.N.Y. 2024), (court denies petition as "the mere process of uprooting this fragile seven-year-old, diagnosed with PTSD … would expose him to a grave risk of psychological harm and put him in an intolerable situation."); *Jacquety v. Baptista* 538 F. Supp. 3d 325, 379 (S.D.N.Y. 2021) (return of the child to her habitual residence would exacerbate her PTSD such that she would face a grave risk of harm); *Felberbaum v. Felberbaum*, No. 24-CV-02333 (PMH), 2025 WL 3442905 (S.D.N.Y. Dec. 1, 2025) (return would exacerbate existing PTSD of children).

The district court therefore erred as an expedited schedule does not justify denying a party the meaningful opportunity to present defenses explicitly recognized under Articles 13(b) and 20 of the Convention.

      b. The Denial of an In Camera Interview or Appointment of Guardian ad Litem Further Undermined the Fact-Finding Process

13

The district court's failure to conduct an *in camera* interview of the Child, failure to appoint an attorney for the Child or guardian ad litem*,* and restrictions on Appellant at the evidentiary hearing which resulted in Appellant having to cut several witnesses made it virtually impossible for her to prove her Article 13(b) grave risk of harm defense. Therefore, the district court abused its discretion by denying Appellant a full and fair opportunity to present her case.

On December 22, 2025 (ECF No. 30), Appellant moved for an in-camera interview of the Child or, alternatively, appointment of a guardian ad litem or attorney for the child in light of the severe abuse allegations raised in the case. The court denied that motion. *See* D. Ct. Dkt. Order dated December 30, 2025.

Given that the grave risk defense centered on alleged physical and sexual abuse, the refusal to permit the district court to hear directly from the Child, or to appoint a neutral guardian, deprived the district court of potentially critical information bearing on risk and credibility. The categorical denial of that request significantly constrained Appellant's ability to present evidence relevant to the grave risk analysis. *See Colchester v. Lazaro*, 16 F.4th 712, 727 (9th Cir. 2021) (Ninth Circuit found that district court's "made it practically impossible for [the respondent] to make out her case.").

c. The Court's Refusal to Compel Production of Dr. Cling's Reports Prejudiced Appellant's Ability to Corroborate Abuse Allegations

14

On December 30, 2025, Appellant requested that Dr. Favaro, Appellant's expert witness, be allowed to interview Appellee as the district court ordered Dr. Cling to interview the Child, despite Appellant and Dr. Favaro's objections. The district court denied the request.

On January 9, 2026, Appellant moved to compel production of Dr. Cling's reports and case notes, which had not been produced in discovery, despite Appellee's promises that they would be. ECF No. 50. Appellant had a good-faith basis to believe that the Child disclosed further details of physical and sexual abuse by the Appellee to Dr. Cling, and that those disclosures may explain why Appellee elected not to call her as a witness at the evidentiary hearing. The district court denied the motion. After Appellee re-designated Dr. Cling from a testifying expert witness to a consulting witness two days prior to the trial commencing, the district court found that Dr. Cling was subject to the protections of Rule 26(b)(4)(B), and Appellant made no showing of "exceptional circumstances", and therefore Appellant was not entitled to the requested discovery. *See* D. Ct. Dkt. Order dated January 10, 2026.

The district court in its Order (ECF No. 60) held that Appellant had not presented sufficient evidence regarding the alleged physical and sexual abuse against the Child and noted that Dr. Favaro, Appellant's expert witness, had met with the Child only once. Denying access to potentially material therapeutic records while

simultaneously faulting Appellant for lack of corroboration materially prejudiced her ability to substantiate the grave risk defense.

In a proceeding where the central issue is whether returning the child would expose her to a grave risk of harm, denying access to potentially probative therapeutic disclosures raises serious due process concerns and weighs heavily in favor of a stay pending appellate review.

> d. The Court Improperly Excluded Appellant's Expert Testimony on Article 20

The district court denied Appellant the opportunity to present testimony from Federica Dell'Orto, her intended expert witness for her Article 20 defense. The district court's stated rationale was that it was not helpful or necessary for the court to make its decision.

In its Order, the district court reasoned that the defense has never been successfully raised in the United States before. ECF No. 60 at 33. However, the rarity of a defense does not render it legally unavailable. Article 20 remains part of the Convention's text. Appellant was entitled to present expert testimony regarding whether return would contravene fundamental principles relating to human rights and fundamental freedoms in the United States. By precluding that testimony outright, the district court prevented Appellant from developing a complete record on a recognized Convention defense.

16

This exclusion is particularly significant on appeal, where a developed factual record is essential. The denial of expert testimony on a Convention defense is a substantive limitation on the presentation of legal argument and supporting evidence.

Individually, each of the foregoing rulings constrained Appellant's ability to present her defenses. Collectively, they demonstrate a proceeding conducted under such compressed timelines and evidentiary limitations that meaningful adversarial testing was compromised. A stay pending appeal is warranted where serious questions exist regarding whether Appellant's defenses were afforded a full and fair hearing.

### ii.    *Article 13(b) Grave Risk of Harm Exception*

Appellant has, at minimum, raised serious questions going to the merits with respect to the district court's rejection of her grave risk defense. In its Order, the district court concluded that Appellant "failed to show by clear and convincing evidence the affirmative defense of grave risk." ECF No. 60 at 3. That conclusion, however, rests on findings that warrant careful appellate review, particularly in light of the unrebutted expert testimony presented at trial.

A significant feature of the grave risk record is the testimony of Appellant's expert, Dr. Favaro. Dr. Favaro testified that, during his evaluation, the Child disclosed that she had been sexually abused by Appellee. He testified that the manner

17

in which the Child communicated the alleged abuse, including her affect and behavioral presentation, was clinically consistent with trauma exposure. He further testified that the Child became dysregulated when talking about her father. Dr. Favaro did not characterize the disclosure as ambiguous or speculative; rather, he explained that the Child's presentation aligned with recognized indicators of trauma in young children. Importantly, this testimony was not challenged through competing expert analysis. Appellee did not present a forensic psychologist to dispute Dr. Favaro's methodology, did not introduce an alternative trauma assessment, and did not undermine the clinical framework through which Dr. Favaro evaluated the Child's statements. Furthermore, Appellee did not testify as part of his rebuttal case, and he never denied the sexual abuse allegations. The expert testimony that the Child disclosed physical and sexual abuse and that her presentation was consistent with trauma therefore stood unrebutted.

The district court nonetheless discounted this testimony, relying in significant part on the testimony of the Child's therapist, Ms. Cecilia Voci, in Argentina. However, that therapist had no opportunity to evaluate the Child following the disclosures at issue. Her testimony therefore did not contradict Dr. Favaro's trauma assessment; at most, it reflected an earlier snapshot of the Child's functioning before the alleged abuse began or before the Child disclosed it. The district court's decision to credit the testimony of a therapist who lacked temporal proximity to the alleged

18

events over the unrebutted evaluation of an expert who actually assessed the Child after the disclosures presents a substantial appellate question. Where a qualified expert evaluates a child post-disclosure and testifies that the presentation is clinically consistent with trauma — and that testimony is neither methodologically impeached nor countered by competing expert opinion — the wholesale rejection of that evidence warrants careful review, particularly in a case involving allegations of physical abuse of a young child.

The district court also discounted Dr. Favaro's conclusions on the ground that he did not "did not discuss alternative sources of [the Child's] trauma." ECF No. 60 at 30. But that critique misses the central point of his testimony. Dr. Favaro was not offering a generalized behavioral hypothesis untethered to concrete allegations; he was testifying that the Child affirmatively disclosed physical and sexual abuse and that her manner of disclosure was clinically consistent with trauma. Once a child makes a direct allegation of sexual abuse, the analytical question is not whether some abstract alternative theory could explain generalized anxiety or behavioral regression. The threshold issue is whether the disclosure itself bears indicia of reliability and whether the Child's presentation is consistent with trauma exposure. Dr. Favaro testified that it was. The district court did not identify a competing expert theory of coaching, fabrication, or misinterpretation, nor did Appellee present expert testimony suggesting an alternative clinical explanation for the Child's statements.

19

Instead, the district court appears to have required Dr. Favaro to hypothesize alternative causes for a direct abuse disclosure. But where a child reports being sexually abused, and a qualified expert finds the disclosure developmentally coherent and trauma-consistent, the absence of an "alternative theory" does not undermine the assessment — particularly where no evidence of coaching or fabrication was established. The district court effectively heard the disclosure evidence and, without countervailing expert testimony, simply chose not to credit it. Whether that approach is consistent with the clear-and-convincing framework governing Article 13(b), especially in light of unrebutted expert analysis, presents a serious appellate question.

Dr. Favaro also conducted a formal danger assessment and applied established clinical methodology to evaluate the risk posed by Appellee's conduct. He concluded that Appellant fell within the "extreme danger" category under the assessment tool. He further testified that specific statements attributed to Appellee — including threats reflecting violent control and punitive discipline (ECF No. 60 at n. 17) — materially increased his level of psychological certainty that the risk to the Child if returned was severe. Dr. Favaro explained that patterns of coercive control, physical aggression, and escalating threats are recognized markers of heightened danger in domestic violence dynamics. His opinion was not speculative; it was grounded in structured assessment criteria.

20

Crucially, that expert testimony was unrebutted. Petitioner offered no competing expert. He did not present a contrary psychological evaluation of Appellant or the Child. There was no testimony disputing the clinical framework applied. Thus, the district court was presented with a professional risk assessment establishing severe risk to the child if returned and no expert evidence to the contrary.

At minimum, the unrebutted expert testimony, the structured danger assessment, and the severity of the alleged harm collectively raise serious questions going to the merits of the Article 13(b) determination. Under the governing stay standard, that showing coupled with the irreversible nature of the potential harm strongly favors issuance of a stay.

### iii. *Article 13 Mature Age Exception*

The district court declined to consider the Child's objections to returning to Argentina and refused Appellant's request for an in-camera interview. Although the Child's maturity was essentially undisputed and Appellee presented no evidence that she was not mature, the court nonetheless found Appellant "failed to meet her burden" to show the Child was sufficiently mature for her views to be considered. ECF No. 60 at 31. Appellant specifically requested an in-camera interview to allow the court to assess the Child's maturity and fear of return firsthand, but that request was denied. *See* ECF No. 30; Dkt. Order dated Dec. 30, 2025. Courts recognize that

evaluating a child's objection is fact-intensive and often informed by direct judicial observation. *See Custodio v. Samillan*, 842 F.3d 1084, 1089 (8th Cir. 2016).

M.K.R., age seven, cannot be deemed immature based solely on chronological age. The Convention contains no bright-line rule, and courts have rejected categorical age limits. *See Blondin,* 238 F.3d at 167. Yet without interviewing her, the district court concluded she lacked sufficient maturity.

The court also suggested possible undue influence. ECF No. 60 at 32. But no evidence supported coaching or influence, no expert testified to it, and the court declined to interview the Child to assess it. The record instead reflected that the Child had expressed negative experiences with her father prior to even travelling to the United States. In particular, the record shows that the Child objected to returning to Argentina because "her father treated her so badly, that he hit her, he spat on her, he slapped her, he locked her in her room, and so did [her] father's partner." ECF No. 60 at n. 17; Tr. at 605:5-606:7. Dr. Favaro testified he observed no signs of coaching or undue influence, and that opinion was unrebutted. The finding of undue influence therefore lacks evidentiary support.

### iv. *Article 20 Human Rights Defense*

The district court held that Appellant failed to meet her burden under Article 20, noting it was "not aware of a single American case" where the defense had succeeded. ECF No. 60 at 33. But the rarity of a defense does not render it

22

unavailable. The court further relied on cases stating that a pending asylum application is not itself a Hague defense. *Id.* While that is correct, Article 20 is intended to address the rare case where return would "utterly shock the conscience" or offend fundamental principles of due process. 51 Fed. Reg. 10503 at 22 (1986).

Appellant argued that the United States' obligation of non-refoulement, recognized in the 1967 Protocol and the Refugee Act of 1980, must be considered alongside the Convention. Forcing the Child to return to a country from which she is simultaneously seeking refuge raises serious tension with those principles. The district court's refusal to permit expert testimony on the viability of the Child's asylum claim and the human rights implications of return deprived Appellant of a meaningful opportunity to develop this defense.

## C. Appellant and the Child Will Be Irreparably Harmed Absent a Stay

Absent a stay, Appellant and the Child face irreparable harm if the Child is returned before this Court reviews the grave risk determination. *See Chafin*, 568 U.S. at 179; *Didon v. Castillo*, 838 F.3d 313, 319 n.12 (3d Cir. 2016). The Child has consistently expressed fear of returning to Argentina, as Dr. Favaro testified. On February 19, 2026, after being told she would be returned, she suffered acute distress, including a panic attack and statements that she did not want to live if forced to return. She attempted to harm herself, prompting police intervention and transport

23

by ambulance to a children's hospital. During evaluation, she told a psychiatrist she had considered jumping from a second-floor window to avoid return.

Both Appellant and the Child also have pending asylum applications. Forced return risks forfeiture of those claims and potential bars to reentry, even if Appellant prevails on appeal. Moreover, as a minor Argentine citizen, the Child may be unable to leave Argentina without Appellee's consent, creating a real risk she could not return to the United States. Once executed, the return order may place the Child beyond this Court's effective protection.

### D. **The Balance of Hardships Tips Sharply in Appellant's Favor**

Under the third factor, courts must consider whether and to what extent the non-movant would suffer harm from a stay. While the Child will suffer irreparable injury absent a stay, Appellee will not experience a similar injury from a brief extension of the status quo while the appeal (which Appellant will seek to have expedited) is pending.

The Child is settled and returning her to Argentina, causing her psychological harm, and then returning her to New York if the appeal is successful would be extremely harmful. In short, absent a stay, Appellant and the Child face potentially devasting irreparable harm, whereas any harm to Appellee from a stay is minimal and can be further minimized by setting a reasonably expedited schedule for briefing and argument. *See Diorinou v. Mezitis*, 237 F.3d 133, 138 (2d Cir. 2001).

### E. **Public Interest Weighs in Favor of a Stay**

The final factor to be considered in the Appellant's request for a stay is whether the public interest would be harmed by issuing the stay. Here, public interest weighs in favor of a stay. There is a strong public interest in protecting children from further injury and unnecessary disruption to their stability and routine. At heart, the Hague Convention is designed to protect "the well-being of a child." *Chafin,* 568 U.S. at 179. Although the Hague Convention "is designed, in part, to ensure the prompt return" of wrongfully removed or retained children, *Ermini v. Vittori*, 758 F.3d 153, 156 (2d Cir. 2014), the "safety of children is paramount," *Van De Sande v. Van De Sande,* 431 F.3d 567, 572 (7th Cir.2005). There is a strong public interest in protecting children from potential re-traumatization, further injury, and unnecessary disruption to their daily routines.

The Supreme Court has recognized that "shuttling children back and forth between parents and across international borders may be detrimental to those children," and suggested that courts can "protect the well-being of the affected children" by "granting stays where appropriate." *Chafin,* 568 U.S. at 178. "[T]he public interest lies in having [a] child returned to the [country of habitual residence] with the approval of [a court of appeals], but not prior to its decision." *Karpenko v. Leendertz*, No. CIV.A. 09-03207, 2010 WL 996465 (E.D. Pa. Mar. 15, 2010) at *3; *see Neumann v. Neumann*, No. 16-1825 (6th Cir. July 22, 2016), ECF 21 at 3

25

("[M]aintaining the children's current residence in Michigan pending review by this court will be less disruptive and cause less harm than immediately returning them to Mexico."). The brief stay requested here is therefore consistent with public interest.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Appellant respectfully requests that this Court grant Appellant's Emergency Stay Motion pending appeal.

Dated: February 23, 2026

Respectfully submitted,

/s/ Michael Banuchis
Michael Banuchis
Green Kaminer Min & Rockmore LLP
*Attorneys for Respondent-Appellant*
420 Lexington Avenue, Suite 2821
New York, NY 10170
Tel: (212) 681-6400
Fax: (212) 681-6999
mbanuchis@gkmrlaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the Word limit of Fed. R. App. P. 27 because, excluding the parts of the document exempted by Fed R. App. P. 32(f), this document contains 4811 words.

2.      This document complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type-style requirements of Fed R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in size 14 Times New Roman font for the body and footnotes.

Dated: February 23, 2026

<u>/s/ Michael Banuchis</u>
Michael Banuchis

27

## CERTIFICATE OF SERVICE

I, Michael Banuchis, counsel for Respondent-Appellant and a member of the Bar of this court, hereby certify that, on February 23, 2026, a copy of the foregoing emergency motion was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

Dated: February 23, 2026

/s/ Michael Banuchis
Michael Banuchis