No. 26-389

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

MARTIN KLADNY,

    *Petitioner-Appellee*

v.

ALEXANDRA JAZMIN RUIZ DEZA

    *Respondent-Appellant.*

---

On Appeal from the United States District Court,
Eastern District of New York,
Case No. 2:25-cv-05754; Judge Orelia E. Merchant, Presiding

---

## REPLY BRIEF IN FURTHER SUPPORT OF RESPONDENT-APPELLANT'S EMERGENCY MOTION FOR STAY <u>PENDING APPEAL</u>

---

Michael Banuchis
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, NY 10170
Tel: (212) 681-6400
Fax: (212) 681-6999
mbanuchis@gkmrlaw.com

*Attorneys for Respondent-Appellant*

1

## I.  <u>INTRODUCTION</u>

Respondent-Appellant files this reply in further support of her emergency motion for a stay of the district court's return order pending Appellant's expedited appeal (2d. Cir. Dkt. No. 13.1). Appellant is likely to succeed on the merits, and both she and the Child face irreparable harm if forced to return to Argentina before this appeal is determined. Accordingly, a stay should be granted.

## II.  <u>ARGUMENT</u>

A vulnerable child is at risk here. Balancing the four stay factors confirms that this Court should grant a stay. Stays are routinely granted in Hague Convention proceedings, particularly when a child's safety is at issue.[1] *See Simcox v. Simcox*, 511 F.3d 594 (6th Cir. 2007) (stay granted "citing the evidence of physical abuse").

---

[1]  *See also Tereshchenko v. Karimi*, 102 F.4th 111 (2d Cir. 2024) (stay issued); *Saada v. Golan*, No. 22-1965 (2d Cir.), Order (Sept. 14, 2022), Dkt. No. 164 (same);*Silva v. Dos Santos*, 68 F.4th 1247, 1253 (11th Cir. 2023) (emergency stay after the district court denied the mother's stay motion); *Walsh v. Walsh*, 221 F.3d 204 (1st Cir. 2000) (affirming stay pending appeal); *Karpenko v. Leendertz*, No. CIV.A. 09-03207, 2010 WL 996465 (E.D. Pa. Mar. 15, 2010) (granting emergency motion for a stay pending appeal); *Neumann v. Neumann,* 684 F. App'x 471 (6th Cir. 2017) (granting stay motion pending appeal); *Kijowska v. Haines*, 463 F.3d 583 (7th Cir. 2006) (granting stay to prevent harm from multiple child relocations); *Baz v. Patterson*, 100 F.4th 854 (7th Cir. 2024), cert. denied, 145 S. Ct. 1049, 220 L. Ed. 2d 381 (2025) (granting stay pending appeal); *Charalambous v. Charalambous*, 627 F.3d 462 (1st Cir. 2010) (granting stay pending appeal after denial by the district court).

## A. <u>The Motion is Not Procedurally Improper</u>

Appellee's procedural objection fails. Appellant requested a brief administrative stay from the district court pending this Court's decision, which the district court granted on February 24, 2026. Impracticability is self-evident: on February 20, Appellee requested the Child be returned to Argentina by February 24, leaving Appellant no adequate or timely remedy below. The time constraints made meaningful relief impossible before irreparable harm would occur. *See Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.,* 996 F.3d 37 (1st Cir. 2021) (finding impracticability where tight timeframe rendered prior district court recourse sufficiently impracticable). This Motion is procedurally proper, and Appellee's objection should be rejected.

## B. <u>Likelihood of Success on the Merits</u>

### i. *<u>The District Court's Rulings Deprived Appellant of a Meaningful Opportunity to Be Heard</u>*

Appellee's contention that Appellant "significantly exceeded her time estimates" (2d. Cir. Dkt. No. 17.1 at 7) and was afforded sufficient time at trial misses the point entirely. Notably, Appellee himself consumed the first three days of a seven-day trial on a single witness. The issue is not the raw amount of time allotted, but whether Appellant had a meaningful opportunity to present her full defense, including critical evidence that was unavailable through no fault of her own. An

extension of time to present an incomplete case is not a substitute for the opportunity to present a complete one.

Appellee argues that Appellant failed to inform the court she had attempted and failed to retrieve records from Argentina, and that those records concern only the mother and would not materially alter the Article 13(b) analysis. Both arguments fail.

As to the first point, Appellant informed the district court that she needed discovery to obtain documents from Argentina and served production requests on Appellee accordingly. In responding, Appellee never stated he searched for or possessed any Argentine medical records relating to Appellant's grave risk defense. Appellant's inability to retrieve five-year-old archived records from Argentine hospitals while in the United States was not strategic, but rather it was the reality she faced. Since filing the stay motion, Appellant has obtained some of those records, annexed hereto as **Exhibit A**.

As to the second, Appellee's assertion that the medical records concern only "incidents involving the mother" and therefore would not materially alter the Article 13(b) analysis fundamentally misunderstands the nature of a grave risk inquiry. Evidence of a pattern of domestic violence perpetrated against a mother is directly relevant to whether that child faces a grave risk of harm upon return. It is well settled in this Circuit that "evidence of prior spousal abuse, [even] though not directed at

4

the child, can support the grave risk of harm defense, as could a showing of the child's exposure to such abuse." *Davies II*, 717 F. App'x at 48 (citation omitted); *accord Ermini*, 758 F.3d at 164; *Souratgar v. Lee*, 720 F.3d 96, 104 (2d Cir. 2013). Therefore, the medical records at issue would have substantiated precisely this kind of harm, and their absence clearly prejudiced Appellant's ability to establish grave risk as the district court noted in its Order that Appellant failed to produce contemporaneous medical evidence from the incidents she testified to in this regard. *See* ECF No. 60 at 22.

Furthermore, Appellee contends there is "no requirement to produce the reports or case notes of an expert who is not designated as testifying and who never served a Rule 26(a)(2) report." This is incorrect and misrepresents the procedural history. Dr. Cling was disclosed as a testifying expert on December 31, 2025, had already evaluated the Child, and had communicated her findings to Petitioner's counsel. Appellant served discovery requests that same day, with responses due January 6, 2026, which was the day after Dr. Cling's evaluation. Only two days before trial did Appellee re-designate Dr. Cling as a consulting witness, a maneuver that appears calculated to shield the Child's most candid statements about her abuse and objections to returning from disclosure.

This Circuit and courts within it have consistently held that materials generated by an expert while designated as a testifying witness remain discoverable

even after re-designation. *See B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of New York,* 171 F.R.D. 57 (S.D.N.Y. 1997) (expert working materials discoverable once expert designated as testifying, even if later withdrawn). In *Hernandez v. Office of the Commissioner of Baseball*, the Southern District ruled that an expert's notes to himself do not qualify for Rule 26(b)(4) protection. *See Hernandez v. The Off. of the Comm'r of Baseball*, 335 F.R.D. 45 (S.D.N.Y. 2020) (*citing Dongguk Univ. v. Yale Univ.*, 2011 WL 1935865, at *1 (D. Conn. May 19, 2011) ("[A]s a general matter, an expert's notes are not protected by 26(b)(4)(B) or (C), as they are neither drafts of an expert report nor communications between the party's attorney and the expert witness.").

The same pattern of procedural unfairness infected the district court's treatment of the Child's own voice. Pertaining to the district court's denial of an in-camera interview of the Child, Appellee argues that *Colchester* concerned the denial of a forensic psychological evaluation, not the denial of an in-camera interview. But the Ninth Circuit's holding was broader: it found that the district court's denial of a psychological evaluation "was **further compounded** by the district court's peremptory refusal to permit [the child] to testify herself," and that these combined denials "made it practically impossible for [the respondent] to make out her case." *Colchester v. Lazaro*, 16 F.4th 712, 727 (9th Cir. 2021) (emphasis added). The court specifically noted that the district court's rationale for refusing the child's testimony

"precluded the testimony of the person with the most personal knowledge of whether [the child] had been abused." *Id.* at 721. The same logic entirely applies here. The district court's refusal to conduct an in-camera interview of the Child precluded a meaningful assessment of the grave risk defense and the mature age defense.

Additionally, Appellee contends that the Child's preliminary Post-Traumatic Stress Disorder ("PTSD") diagnosis fails to establish grave risk because it does not prove causation. However, Article 13(b) does not require proof of causation to a medical certainty. It requires a showing that return would expose the child to a grave risk of psychological or physical harm. A PTSD diagnosis is powerful corroborating evidence that a child has suffered significant psychological trauma and is properly considered as part of the holistic grave risk analysis. Courts in this Circuit and beyond have consistently recognized PTSD diagnoses as highly relevant to the Article 13(b) determination.[2] Notably, Dr. Favaro could only review a preliminary

---

[2] *See, e.g., Danaipour v. McLarey*, 286 F.3d 1, 17 (1st Cir. 2002) (holding that evidence regarding PTSD can have "a direct bearing on grave risk determinations"); *Blondin v. Dubois*, 238 F.3d 153, 158 (2d Cir. 2001) (affirming district court's grave risk determination based on a finding the children would suffer from a recurrence of PTSD); *Saada v. Golan*, 712 F. Supp. 3d 361, 378 (E.D.N.Y. 2024), *appeal withdrawn*, No. 24-468, 2024 WL 2716485 (2d Cir. Mar. 20, 2024) (court denies petition as "the mere process of uprooting this fragile seven-year-old, diagnosed with PTSD … would expose him to a grave risk of psychological harm and put him in an intolerable situation."); *Morales v. Sarmiento*, No. 4:23-CV-00281, 2023 WL 3886075, at *13 (S.D. Tex. June 8, 2023) (the court found that return would elicit a relapse in child's PTSD symptoms that were slowly subsiding); *Felberbaum v. Felberbaum*, No. 24-CV-02333 (PMH), 2025 WL 3442905 (S.D.N.Y. Dec. 1, 2025) (return would exacerbate existing PTSD of children).

diagnosis because the Child was on a waiting list for psychiatric confirmation. That confirmation came on March 11, 2026, when Dr. Cruz officially diagnosed the Child with PTSD and Major Depression. Dr. Cruz's letter is annexed hereto as **Exhibit B**.

## ii. _Grave Risk of Harm Defense_

At trial, Dr. Favaro testified that the Child affirmatively disclosed physical and sexual abuse by Appellee, that her behavioral presentation was clinically consistent with trauma exposure, and that she became dysregulated when discussing her father. He further conducted a formal danger assessment using established clinical methodology and concluded that Appellant fell within the "extreme danger" category. ECF No. 59 at ¶21. Critically, this testimony was entirely unrebutted.

Appellee's contention that the abuse allegations were not disclosed to the Child's treating therapist in Argentina omits crucial context. The Child's disclosures concerned sexual abuse that began in October 2024, when the custody agreement required her to begin overnight stays at Appellee's home three days a week. Ms. Voci, the Child's therapist in Argentina, ceased treating the Child in September 2024. Her testimony therefore could not contradict Dr. Favaro's trauma assessment.

Appellee also claims Appellant presented no evidence of treatment steps taken outside of Dr. Favaro's evaluation (2d. Cir. Dkt. No. 17.1 at 15). This too is incorrect. The Child began therapy in the United States in September 2025, and her therapist preliminarily diagnosed her with PTSD. Dr. Favaro testified to this at the trial.

### iii. _Mature Child Exception_

Appellee claims Appellant relied solely on Dr. Favaro's testimony to prove her Mature Age defense, echoing the district court's reasoning for denying it. But the district court refused to interview the Child despite Dr. Favaro's expert opinion regarding the Child's maturity and objections to returning to Argentina. The court found "a number of factors leading the Court to believe that the Child may be unduly influenced by the [Appellant]" (ECF No. 60 at 32), yet this conclusion was based on no direct observations of the Child. That refusal precluded any meaningful assessment of the Child's maturity and objections under Article 13, and whether undue influence existed. _See Bassat v. Dana_, No. 25-10915, 2025 WL 2304896, at *8 (11th Cir. 2025) (reversing where lower court failed to acknowledge children's testimony or find it lacked credibility).

### C. Irreparable Injury Absent a Stay

Appellee's assertion that there is "little reason to believe that Appellant will suffer 'irreparable damage' if this Court does not stay its … Order" (2d. Cir. Dkt. No. 17.1 at 18) is contradicted by the record. Appellant testified extensively about the severe domestic violence she suffered at Appellee's hands, and Dr. Favaro's unrebutted danger assessment indicated that she would be in "extreme danger" if returned to Argentina. ECF No. 59 at ¶21. If the Child is returned, Appellant will accompany her, as Appellant cannot, as a matter of parental responsibility and her

own safety, permit the Child to return to Appellee's custody unaccompanied. Doing so would require Appellant to abandon her pending asylum application and return to the same city as her abuser. Should Appellant prevail on appeal, there is no guarantee Appellee will execute the travel authorization required for the Child to leave Argentina, and no assurance that Appellant and the Child could re-enter the United States if their asylum claims have been withdrawn or dismissed as a result of them leaving the country.

Appellee incorrectly contends that a pending asylum application is insufficient to establish irreparable harm for stay purposes. (2d. Cir. Dkt. No. 17.1 at 21). Courts have held otherwise. *See M.M.V. v. Barr*, 459 F. Supp. 3d 1 (D.D.C. 2020) (irreparable harm favored asylum seekers facing return to countries where they would suffer violence, persecution, or death); *Nken v. Holder*, 556 U.S. 418, 436 (2009) (recognizing "public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm").

Additionally, here too, Appellee fails to meaningfully address the severe harm to a minor child of being uprooted from her daily routine and therapeutic treatment and forced to return to a parent that has caused them deep trauma. Dr. Favaro testified that returning the Child would cause re-traumatization. The Child was diagnosed with PTSD and Depression. A double relocation, should Appellant prevail on appeal, would compound instability and risk severe re-traumatization. In short, Appellee's

10

framing of this case and his efforts to minimize his abuse and its substantial effects on the Child only underscore the need for a stay of the return order until this Court rules on the merits of Appellant's appeal.

Appellee's suggestion that the February 19, 2026, incident "may have been fabricated" and that Appellant's counsel's failure to respond to "repeated requests" raises "serious concerns" (2d. Cir. Dkt. No. 17.1 at 19-20) is inflammatory and unsupported. Those "repeated requests" were two emails sent on a Saturday afternoon, followed by Appellee seeking court intervention on Sunday morning. These events do not provide a basis to infer fabrication of a psychiatric emergency.

### D. <u>Injury to Other Party</u>

The harm Appellant and the Child face absent a stay is severe and irreversible. The harm to Appellee from a brief stay while an expedited appeal proceeds is, by contrast, minimal. Appellee can maintain meaningful contact with the Child through electronic means during the pendency of the appeal. *See Karpenko v. Leendertz*, No. 09-CV-3207, 2010 WL 996465, at *3 (E.D. Pa. Mar. 15, 2010) (granting stay and noting availability of electronic communications in assessing harm to petitioner). The disruption of a brief appellate stay is far less harmful than the irreversible consequences of executing a return order that this Court may find was issued in error. *See Diorinou v. Mezitis*, 237 F.3d 133, 138 (2d Cir. 2001).

11

### E. **Public Interest**

Finally, the public interest weighs in favor of a stay. Both Appellant and the Child are seeking relief and a final determination from this Court on critical matters of safety. There is, therefore, a compelling public interest in staying return pending this Court's final review of the appeal, as well as in safeguarding the Child from severe re-traumatization and future harm. The purpose of the Hague Convention, together with the unique circumstances presented here, strongly supports the issuance of a stay.

### III. **CONCLUSION**

For the foregoing reasons, and for those set forth in Appellant's originating motion, Appellant respectfully requests that this Court grant Appellant's Emergency Stay Motion.

Dated: March 12, 2026

Respectfully submitted,

/s/ Michael Banuchis
Michael Banuchis
Green Kaminer Min & Rockmore LLP
*Attorneys for Respondent-Appellant*
420 Lexington Avenue, Suite 2821
New York, NY 10170
Tel: (212) 681-6400
Fax: (212) 681-6999
mbanuchis@gkmrlaw.com

12

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This document complies with the Word limit of Fed. R. App. P. 27 because, excluding the parts of the document exempted by Fed R. App. P. 32(f), this document contains 2598 words.

2. This document complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type-style requirements of Fed R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in size 14 Times New Roman font for the body and footnotes.

 Dated: March 12, 2026

/s/ Michael Banuchis
Michael Banuchis

## **CERTIFICATE OF SERVICE**

I, Michael Banuchis, counsel for Respondent-Appellant and a member of the Bar of this court, hereby certify that, on March 12, 2026, a copy of the foregoing Reply was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

Dated: March 12, 2026

/s/ Michael Banuchis
Michael Banuchis

Exhibit A



**Patient: RUIZ, DEZA ALEXANDRA JAZMIN**
**Foreign National ID Number: 94838907 - Age: 28 years 7 months**
**MH: RU970742/00**



SI
SAN ISIDRO

**Municipality of San Isidro**

## Hospitalization - Boulogne Municipal Hospital

12/13/2017 - 7:50 p.m.

From: 12/13/2017 7:50 p.m. - To: 12/13/2017 8:30 p.m.
Stay: 1 day(s)

### Medical discharge

12/13/2017 - 8:30 p.m.

ESCAPE

### Diagnosis

12/13/2017 - 8:30 p.m.

Main: MULTIPLE HEAD INJURIES

### Procedure

12/13/2017 - 7:50 p.m.

EMERGENCY CARE AT THE EMERGENCY ROOM

### Bed pass

12/13/2017 - 7:50 p.m.

Guard - Single
Bed: G-Box 7A
From: 12/13/2017 7:50 p.m. To: 12/13/2017 8:30 p.m.
Stay: 1 day(s)

IF-2026-00094388-SI-DGUAI

RUIZ, DEZA ALEXANDRA JAZMIN



**Sex** Female
**MH No.** RU970742/00
**Social work** SOCIAL WORK BY MINISTERS, SECRETARIES, AND UNDER-SECRETARIES
**Member Number** 94838907
**Date of birth** 07/11/1997 (28 years 7 months)
**Height**
**Weight**
**Blood Type**
**Primary Care Physician**

General     **Chronological**

---

**12/13/2017 8:50 p.m.**                          Ambulatory
**Hospital** Boulogne Municipal Hospital
**Adult** Care Specialty (H: Boulogne)
**Medical** Professional, Undetermined
**User Registration** 062080 - 12/13/2017

**Internships**

01.04 - Care in the Emergency Room or Outpatient Clinic (Does not include 01.01)

420302 Medical Consultation on Call

---

**12/13/2017 7:50 p.m. - 12/13/2017 8:30 p.m.**           Admission
**Duration** 00:40
**Hospital** Boulogne Municipal Hospital
**Guard** Service / **Single** Area
**Diagnosis** (Principal) Multiple Head Injuries
**Specialty** Pediatrics, CAI
There are no further records in the hospitalization

---

IF-2026-00094388-SI-DGUAI

**Municipalidad de San Isidro**

---

## Internación - Hospital Municipal Ciudad de Boulogne

13/12/2017   19:50 hs.

Desde: 13/12/2017 19:50   Hasta: 13/12/2017 20:30
Estada: 1 día(s)

### Alta

13/12/2017   20:30 hs.

FUGA

### Diagnóstico

13/12/2017 - 20:30 hs.

Principal: TRAUMATISMOS MULTIPLES DE LA CABEZA

### Procedimiento

13/12/2017   19:50 hs.

ATENCION DE URGENCIA EN GUARDIA

### Pase de cama

13/12/2017 - 19:50 hs.

Guardia - Única
Cama: G Box 7A
Desde: 13/12/2017 19:50 - Hasta: 13/12/2017 20:30
Estada: 1 día(s)

IF-2026-00094388-SI-DGUAI



**Sexo** Femenino
**N° HC** RU970742/00
**Obra social** OBRA SOCIAL DE MINISTROS, SECRETARIOS Y SUBSECRETARIOS
**Número Afiliado** 94838907
**Fecha de nacimiento** 11/07/1997 (28 años 7 meses)
**Altura**
**Peso**
**Grupo Sanguineo**
**Médico Cabecera**

General   **Cronológico**

---

**13/12/2017 20:50**                                                        Ambulatorio
**Hospital** Hospital Municipal Ciudad de Boulogne
**Especialidad** Guardia Adultos(H:Boulogne)
**Profesional** Medico, No Determinado
**Usuario Alta** 062080 - 13/12/2017

**Prácticas**

> 01.04 - Atencion En Guardia O Consultorio Externo(No Incluye 01,01)

> 420302 - Consulta Medica En Guardia

---

**13/12/2017 19:50 - 13/12/2017 20:30**                                      Internación
**Estada** 00:40 hs
**Hospital** Hospital Municipal Ciudad de Boulogne
**Servicio** Guardia / **Area** Única
**Diagnóstico** (Principal) Traumatismos Multiples De La Cabeza
**Especialidad** Pediatria CAI
**No existen más registros en la internación**

---

 

# Certificate of Translation

I, **GIANELLA ECHANIQUE**, am over the age of 18, competent to translate from **SPANISH** to **ENGLISH**, and hereby certify that the translation of the **MEDICAL RECORDS** is true and accurate (including any stamps or seals) to the best of my abilities. I understand that if any part of the translation is intentionally false, I may be subject to penalties under the law.

*The original document and the translation are attached to this certification.*

Signature of Translator

646-769-9130
Phone Number

American Translators Association
*The Voice of Interpreters and Translators*

This Certifies that
**NOTARIA LATINA**
ATA Member Number 280342
is a Corporate Member in good standing
for the year 2024

211 N. Union Street Suite 100, Alexandria VA 22314
www.atanet.org | Telephone +1-703-683-6100 | Fax +1-703-683-6122

1541 Saint Nicholas
New York, NY 10040

Address of Translator

nyc@notarialatina.com
Email of Translator

State of New York
County of New York.
Sworn (or affirmed) to before me this
7 day of _March._ , 2026



American
Translators
Association
INDIVIDUAL MEMBER



📍1541 St Nicholas Ave New York, NY 10040
🌐 www.notarialatina.com | 📞 646-768-8072  | ✉ info@notarialatina.com

---

TRINIDAD SAN ISIDRO

FONDO DE LA LEGUA 851

(1607) SAN ISIDRO
T.E. 4127-8888

---

TAXED: N

Current Account No.: 149704

Admission No. : 287405

Admission Date : 10/29/18

Admission Time : 20:53

Room No. : / 1

naDischarge Date :

Discharge Time :

Medical Record No.: 3325890/1

**Admission Request**

---

**Personal Information**

Birth Last Name: K▮▮▮R▮▮D▮▮
Married Last Name: M▮J▮

D.N.I.: 57237866      I.D.:      L.C./L.E.:      Other:

Nationality: ARGENTINA      Date of Birth: 09▮2018      Sex: F      Marital Status: Single

Address: CARLOS VILLATE 5572      City: MUNRO
Province: BUENOS AIRES      Postal Code:      Telephone: 1537012344

Work Address:
Company:      City:
Province:      Postal Code:      Telephone:

Affiliate Status GALENO: ACTIVE RECOVERY SUR – 10/29/2018  20:55

**Companion Information**
Full Name: ALEXANDRA RUIZ
Address: CARLOS VILLATE 5572      City: MUNRO
Province:      Postal Code:      Phone: 1537012344
Relationship: MOTHER      Document: DNI

Work Address:
Company:      City:
Province:      Postal Code:      Phone:

---

**Hospitalization Information**

Provider: GALENO AZUL      Plan      :   AZUL

Member: 214635101      Reservation :      0

Physician: PEDIATRIC ON-CALL PHYSICIAN  Reason for Hospitalization : PEDIATRIC CLINICAL ADMISSION

---

The undersigned, whose personal details are recorded above, constitute themselves as joint and several debtors and principal payers of all sanatorium expenses, room charges, fees, supplies, professional fees, and any other charge generated by the hospitalization and services provided to the patient that are not expressly accepted and effectively paid by the entity to which the patient belongs. Matters related to the scope of coverage that may arise between the patient and his/her institution shall not be enforceable against GALENO Argentina S.A.

They also declare that they acknowledge and accept that, since the professionals who will attend the patient are those designated by the patient and/or his/her entity, and are therefore independent from the Sanatorium, the medical procedures performed by them shall be the sole responsibility of such professionals.

**SANATORIO DE LA TRINIDAD DE SAN ISIDRO**
**Pediatrics Department**

# EPICRISIS

| Name and Last Name | K███ R███ D███ M██ | Age | 1 month and a half |
|---|---|---|---|
| Date of Birth | 9/██18 | Sex | Female |
| Date of Admission | 10/29/18 | Date of Discharge | 10/30/18 |

**Reason for Admission:** Head trauma (TBI) without loss of consciousness.

**Current Illness:** The baby, while under the care of her parents, fell from her father's arms. According to the account, the father was holding the baby with his right upper limb, supporting her only on his hand and forearm while attempting to move her from the marital bed to the crib. The baby fell approximately 50 cm, impacting the occipital region of the skull against the edge of the crib railing, and then the body slid and fell to the base (wooden mattress support) of the box spring bed. They deny loss of consciousness and vomiting; they only report that the baby was irritable and unable to fall asleep. She presented to the emergency department at 20:53 hours.

**Clinical Course:** Favorable. She has not presented focal neurological deficit signs. Glasgow score optimal. Oral intake resumed.

**Complementary Tests:**
**Laboratory:** Normal
**Complete Urinalysis:** Normal
**Abdominal Ultrasound:** Normal
**Head CT Scan without contrast:** Normal, without bone or parenchymal lesions.

**Discharge Diagnosis:** Head trauma (TBI) without loss of consciousness.

**Indications:**
Study reports are provided.
Warning signs explained.
Follow-up with primary pediatrician in 24 hours.

```
--------------------------------------------A--------------------------------
TRINIDAD SAN ISIDRO
FONDO DE LA LEGUA 851
( 1607)  SAN ISIDRO
T.E. 4127-8888
----------------------------------------------------------------------------
G R A V A D O  :  N                    Admision Nro. :   287405
  Cta. Cte.: 149704                    Fecha Ingreso : 29/10/18
                                       Hora  Ingreso :    20:53
                                       Habit. Nro.   :      / 1
                                       Fecha Alta    :
                                       Hora Alta     :
                                       H. C. Nro.    :3325890/1

                 Solicitud de Admision
----------------------------------------------------------------------------
Datos Personales
Apellido de nacimiento : KLADNY RUIZ DEZA
Apellido de.casada   :
Nombres              : MIA JAZMIN
D.N.I.:57237866    C.I.:      L.C./L.E.:      Otro:
Nacionalidad: ARGENTINA    Fecha Nac.: 04/09/2018 Sexo : F  Est.Civ.: Soltero
Domicilio : CARLOS VILLATE 5572       Local.: MUNRO
Provincia : BUENOS AIRES              C.P. :       TELEFONO : 1537012344
Domicilio Laboral :
Empresa  :                       Local. :
Provincia :                      C.P. :      T.E. :
Estado Afiliado GALENO: ACTIVO - RECUPERO SUR - 29/10/2018 20:55


Datos Acompañante
Nombre y Apellidos : ALEXANDRA RUIZ
Domicilio : CARLOS VILLATE 5572       Local. : MUNRO
Provincia :                      C.P. :      T.E. : 1537012344
Relacion  : MAMA                 Documento : DNI
Domicilio Laboral :
Empresa  :                       Local. :
Provincia :                      C.P. :      T.E. :
----------------------------------------------------------------------------
Datos de la Internacion
Entidad : GALENO AZUL                 Plan  : AZUL
Socio   : 214635101                   Reserva :      0
Medico  : MEDICO DE GUARDIA DE PEDIATRIA Motivo Internac. : INTERNACION PED.CLIN

----------------------------------------------------------------------------
```

Los abajo firmantes, cuyos datos personales se registran precedentemente, se constituyen en codeudores solidarios y principales pagadores de todos los gastos sanatoriales, pensiones, derechos, insumos, honorarios y cualquier otro cargo que se genere por la internacion y servicios que se presten al paciente, que no sean expresamente aceptados y efectivamente abonados por la entidad a la que pertenece el paciente, sin que sean oponibles a GALENO Argentina S.A. las cuestiones relativas a los alcances de la cobertura que pudieren plantearse entre este y su institucion.

Asimismo manifiestan conocer y aceptar que, en razon de que los profesionales que lo asistiran son los designados por el paciente y/o su entidad, y ajenos en consecuencia al Sanatorio, las practicas medicas que estos efectuen seran de exclusiva responsabilidad de los mismos.


```
   ------------------------------    ------------------------------
   FIRMA DEL PACIENTE O DEUDOR    FIRMA DEL ACOMPAÑANTE O CODEUDOR

Operador : MMU MILAGROS MULLER
```

SANATORIO DE LA TRINIDAD DE SAN ISIDRO
Servicio de Pediatría

# EPICRISIS

| Nombre y Apellido | Kladny Ruiz Deza Mia | Edad | 1 mes y medio |
|---|---|---|---|
| Fecha de nacimiento | 4/9/18 | Sexo | femenino |
| Fecha de Ingreso | 29/10/18 | Fecha de Egreso | 30/10/18 |

**Motivo de Internación:** TEC sin pérdida del conocimiento

**Enfermedad Actual** Beba que estando al cuidado de sus padres presenta caída de los brazos paterno. Según el relato "el padre toma a la beba con su miembro superior derecho, solo apoyándola sobre su mano y antebrazo en intención de pasarla de la cama matrimonial a la cuna y sufre caída aprox. 50 cm impactando región occipital de cráneo contra borde de baranda de la cuna y deslizándose el cuerpo cae a la base (colchon de madera) de la cama somier. Niegan perdida de la conciencia y vómitos, solo que estaba quejosa y no podía conciliar el sueño Consulta a guardia 20.53 hs

**Evolución :** Favorable, no ha presentado signos neurológicos deficitarios. Glasgow óptimo Se realiza precario
**Exámenes complementarios:**
**Laboratorio** Normal
**Orina Completa:**
**Ecografía Abdominal** Normal
**TAC de cerebro sin contraste** Normal sin lesiones óseas ni parenquimatosas

**Diagnóstico de Egreso:** TEC sin pérdida de conocimiento

**Indicaciones:**
Se entregan informes de estudios
Pautas de alarma
Control con pediatra de cabecera en 24 hs



 **Notaría Pública** LATINA

# Certificate of Translation

I, **GIANELLA ECHANIQUE,** am over the age of 18, competent to translate from **SPANISH** to **ENGLISH**, and hereby certify that the translation of the **MEDICAL SUMMARY** is true and accurate (including any stamps or seals) to the best of my abilities. I understand that if any part of the translation is intentionally false, I may be subject to penalties under the law.

*The original document and the translation are attached to this certification.*

_____
Signature of Translator

347-846-0070
Phone Number

1541 Saint Nicholas
New York, NY 10040

Nyc2@notarialatina.com
Email of Translator

Address of Translator

**American Translators Association**
*The Voice of Interpreters and Translators*

This Certifies that
**NOTARIA LATINA**
ATA Member Number 280342
is a Corporate Member in good standing
for the year 2024

211 N. Union Street Suite 100, Alexandria VA 22314
www.atanet.org | Telephone +1-703-683-6100 | Fax +1-703-778-7222

State of New York
County of New York.
Sworn (or affirmed) to before me this
11 day of March , 2026.

**ata** American Translators Association INDIVIDUAL MEMBER

**ROXANA FIALLO**
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01FI0038903
Qualified in Queens-Certificate filed in New York County
Commission Expires June 30, 2029

1541 St Nicholas Ave New York, NY 10040
🌐 www.notarialatina.com | 📞 646-768-8072 | ✉ info@notarialatina.com

Exhibit B



**HISPANIC COUNSELING CENTER, INC.**

Nassau Main Office • 344 Fulton Avenue, Hempstead NY 11550 • T: 516-538-2613 • F: 516-538-2515
Suffolk Satellite Office • 85 W. Main Street, Bay Shore, NY 11706 • T: 631-301-4858 • F: 631-939-2144
www.hispaniccounseling.org • info@hispaniccounseling.org

Claudia Boyle, LMHC
Chief Executive Officer

March 11, 2026

To whom it may concern.

This letter is written on behalf of
M▓ K▓ R▓ DOB ▓ 2018 upon
her mother request, Alexandra Ruiz.
Today, March 11, 2026 patient had
a psychiatric evaluation and was
diagnosed with Posttraumatic Stress
Disorder F.4310, & Major Depression
Disorder, single episode, moderate.
Patient was prescribed: Sertraline 25 mg
oral, once a day to treat symptoms related
to depression, anxiety, & PTSD

Sincerely,
Idania Cruz MD
Child psychiatrist



Idania Cruz, ▓
Lic. # 172165
DEA # BC1207213